**United States District Court**
For the Northern District of California

1

2                                         **\*E-FILED 3/19/2008\***

3

4

5

6

7                                    NOT FOR CITATION

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

11   FEDERAL INSURANCE COMPANY,              No. C05-01878 JW (HRL)

12              Plaintiff,                   **ORDER GRANTING ST. PAUL'S**
         v.                                  **MOTION FOR PROTECTIVE ORDER**
13                                           **AND TO BAR TESTIMONY**
     ST. PAUL FIRE AND MARINE INSURANCE
14   COMPANY,

15              Defendant.                   **[Re: Docket No. 110]**
                                          /
16   ST. PAUL FIRE AND MARINE INSURANCE
     COMPANY,
17
                Counterclaimant,
18       v.

19   FEDERAL INSURANCE COMPANY and
     NATIONAL UNION FIRE INSURANCE
20   COMPANY OF PITTSBURGH,

21              Counterclaim defendants.
                                          /
22

23           This matter having been referred to the undersigned for disposition, on March 18, 2008,

24   this court heard the expedited motion for protective order and to bar testimony filed by

25   defendant St. Paul Fire and Marine Insurance Company ("St. Paul").  Plaintiff Federal

26   Insurance Company ("Federal Insurance") opposed the motion.  Upon consideration of the

27   moving and responding papers, as well as the arguments of counsel, this court grants the

28   motion.

**United States District Court**
For the Northern District of California

## I. BACKGROUND

This is an insurance coverage action in which plaintiff Federal Insurance and defendant St. Paul seek declaratory relief with respect to expenses they paid in an Underlying Litigation pursuant to their coverage obligations to their insured, Cirrus Logic ("Cirrus").[1]  The Underlying Litigation concerned allegations by Fujitsu Limited ("Fujitsu") that its hard drives were damaged by integrated circuit chips that it purchased from Cirrus.  In the instant lawsuit, the parties (all of whom are insurance companies who issued policies to Cirrus) dispute the amount of money they were obliged to contribute to the settlement of the Underlying Litigation. St. Paul is Cirrus' primary carrier.  Federal Insurance's policy is excess to St. Paul's policy. The National Union policy is excess to both the St. Paul and Federal policies.

Pursuant to the court's scheduling order, on September 20, 2007, St. Paul disclosed the experts it intended to call at trial – among them, Craig D. Hillman, Ph.D, who served as an expert for Fujitsu in the Underlying Litigation.  St. Paul says that Dr. Hillman was retained to opine about the evidence in the Underlying Litigation, namely (a) whether Cirrus' chips caused any physical damage to property other than Cirrus' chips and (b) whether the physical damage to those chips was gradual or sudden.  These are issues which St. Paul says pertain to whether an "impaired property" exclusion applied.  St. Paul's expert disclosure included Dr. Hillman's expert report and related exhibits.  (Shrake Decl., Ex. 2).

Federal Insurance did not disclose any principal experts.  Instead, on October 4, 2007, it disclosed Richard A. Blanchard, Ph.D, as a rebuttal expert.  Dr. Blanchard also served as an expert for Fujitsu in the Underlying Litigation.  His rebuttal report indicates that he was "retained to review and comment on the report of Craig D. Hillman, Ph.D."  (Shrake Decl., Ex. 4).

Federal Insurance subsequently served a notice for Dr. Hillman's deposition.  St. Paul also served a notice for the deposition of Dr. Blanchard.  In the meantime, before either deposition was taken, Judge Ware granted Federal Insurance's motion for partial summary judgment and denied St. Paul's motion for partial summary judgment.  In that order, Judge

---

[1]     Cirrus is not a party to the instant lawsuit.

1   Ware considered (a) how the "impaired property" exclusion of St. Paul's policy operates; (b)

2   whether a duty to defend was triggered in light of the exclusion, and (c) whether the duty to

3   defend was extinguished when St. Paul learned additional facts about the Fujitsu hard drives.

4   Briefly stated, he concluded that St. Paul's duty to defend arose on June 18, 2004 (when Fujitsu

5   filed a second amended complaint) and was not extinguished until the Underlying Litigation

6   concluded.  (*See* Docket No. 88).  Federal Insurance sought leave to file a motion for

7   reconsideration as to certain matters, but that motion was denied.  (*See* Docket No. 101).

8        A dispute has now arisen as to the depositions of Drs. Hillman and Blanchard.  St. Paul

9   says that it has re-designated Dr. Hillman as a non-testifying expert because the court's recent

10  summary judgment order and its order denying reconsideration largely dispose of the issues on

11  which Dr. Hillman was designated to testify.  It seeks a protective order preventing him from

12  being deposed.  Additionally, it requests an order barring Federal Insurance from presenting any

13  testimony from Dr. Blanchard.  It argues that, since Dr. Hillman will not be testifying, there will

14  be no need for rebuttal testimony from Dr. Blanchard.  Federal Insurance disagrees, maintaining

15  that St. Paul cannot preclude Dr. Hillman's deposition (or discovery of his documents) simply

16  by re-designating him now as a non-testifying expert.  It also argues that, even if Dr. Hillman

17  does not testify, there is still a need for Dr. Blanchard's testimony.

**II.  DISCUSSION**

19       Rule 26(b)(4) of the Federal Rules of Civil Procedure addresses discovery from expert

20  witnesses.  Under Fed.R.Civ.P. 26(b)(4)(A), "[a] party may depose any person who has been

21  identified as an expert whose opinions may be presented at trial.  If Rule 26(a)(2)(B) requires a

22  report from the expert, the deposition may be conducted only after the report is provided."

23  FED.R.CIV.P. 26(b)(4)(A).  By contrast, Fed. R. Civ. P. 26(b)(4)(B) pertains to experts who

24  have been retained or specially employed by a party in anticipation of litigation or to prepare for

25  trial and who are not expected to testify at trial.  A party ordinarily may not take discovery of

26  those experts except as provided in Fed. R. Civ. P. 35(b) (which concerns reports of physical

3

United States District Court

For the Northern District of California

1    and mental examinations)[2] or upon a showing of "exceptional circumstances under which it is

2    impracticable for the party to obtain facts or opinions on the same subject by other means."

3    FED.R.CIV.P. 26(b)(4)(B).

4          Principally, this court must decide whether Dr. Hillman, having initially been designated

5    by St. Paul as a testifying expert witness (and having provided a report), but later re-designated

6    as a non-testifying expert, may be deposed by Federal Insurance.  The parties have not cited,

7    and this court has not found, binding precedent on point.  The issue is one which has been

8    addressed by a number of courts, resulting in a split of authority.

9          Federal Insurance urges the court to follow *House v. Combined Ins. Co.*, 168 F.R.D. 236

10   (N.D. Iowa 1996).  In *House*, plaintiff sued her former employer and supervisor for sexual

11   harassment and sought damages for alleged emotional distress.  After defendants' expert, a

12   psychiatrist, conducted a mental examination of plaintiff, plaintiff moved to compel his

13   deposition, as well as a copy of his examination report.  Defendants then advised that they no

14   longer intended to call the psychiatrist to testify at trial and resisted plaintiff's efforts to take

15   discovery of him.

16         The *House* court found that plaintiff was no longer "entitled" to depose the defense

17   expert under Fed.R.Civ.P. 26(b)(4)(A).  *See id*. at 246.  Nonetheless, it also concluded that the

18   "exceptional circumstances" test under Fed. R. Civ. P. 26(b)(4)(B) did not apply because, in its

19   view, that rule applies only to experts who have never been designated to testify at trial.  *Id*. at

20   245.  The court therefore applied a discretionary "balancing test," whereby it balanced

21   probative value against prejudice.  *Id*. at 246.  Focusing on the nature of the testimony sought

22   (i.e., concerning plaintiff's mental examination), the court found that plaintiff had an overriding

23   interest in presenting all evidence pertinent to her emotional distress claim.  It therefore

24   permitted her to depose the defense expert and to call him at trial (in which event, plaintiff

25   would be obliged to pay his expert witness fee).  *Id*. at 247-49.

26         St. Paul counters that the "exceptional circumstances" standard is the proper test to be

27   applied and that this court should instead follow *FMC Corp. v. Vendo Co*., 196 F. Supp.2d 1023

28
_____

   [2]      This case does not concern any physical or mental examination.

4

1    (E.D. Cal. 2002).  In *FMC Corp.*, plaintiff sought contribution for the clean up of certain

2    environmental contamination.  Plaintiff eventually settled with defendants.  As part of that

3    settlement, plaintiff agreed to withdraw its expert designations and further agreed that it would

4    not make its expert work product available to a third-party defendant.  The third-party

5    defendant subpoenaed plaintiff's experts to testify at trial.  Defendants moved to quash the

6    subpoena, citing the settlement agreement with plaintiff.  *Id*. at 1041.

7         The *FMC Corp.* court distinguished *House* on the ground that "[u]nlike *House*, the

8    experts here have not performed a personal medical examination pursuant to Rule 35, nor

9    scientific tests that are unavailable or unduplicatable."  *Id*. at 1046.  After reviewing cases

10   addressing the issue, the court rejected *House*'s "balancing test" and held that the "exceptional

11   circumstances" standard applies, including in those situations where an expert's report or

12   opinions are disclosed before the expert is re-designated as a non-testifying expert.  *Id*. at 1046.

13   Finding that the third-party defendant made no showing that the information and opinions of

14   plaintiff's experts were otherwise unobtainable or incapable of being reproduced, and in light of

15   the "strong policy against permitting a non-diligent party from free-riding off the opponent's

16   industry and diligence," the court concluded that the third-party defendant should not be

17   allowed to depose plaintiff's experts to or to call them at trial.  *Id*. at 1046-47.  The court further

18   noted that, even under *House*'s "balancing standard," the third-party defendant's lack of

19   diligence in designating its own experts and the prejudice to plaintiff outweighed the probative

20   value of the testimony being sought.  *Id*. at 1047-48.  Moreover, it noted that because a new

21   scheduling order was being entered, the third-party defendant would have ample time in which

22   designate its own experts.  *Id*.

23        This court agrees that Federal Insurance is no longer entitled to depose Dr. Hillman

24   under Fed. R. Civ. P. 26(b)(4)(A).  Moreover, it appears that the majority of courts that have

25   confronted this issue have concluded that the "exceptional circumstances" standard applies.  *See*

26   *Estate of Manship v. United States*, 240 F.R.D. 229, 235-37 (M.D. La. 2006) (reviewing cases).

27   Accordingly, this court concludes that the "exceptional circumstances" test should be used here.

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    Even so, Federal Insurance emphasizes that Dr. Hillman's expert report was produced

2  before St. Paul re-designated him as a non-testifying expert.  Indeed, several decisions suggest

3  that discovery of a withdrawn expert should be permitted where that expert provided testimony

4  or produced a report before re-designation.  *See e.g., Estate of Manship*, 240 F.R.D. at 237

5  (concluding that exceptional circumstances did not exist to justify a deposition where the

6  experts would not testify at trial and did not produce expert reports)*; Ross v. Burlington*

7  *Northern Railroad* Co., 136 F.R.D. 638 (N.D. Ill. 1991) (concluding that the protections of

8  Fed.R.Civ.P. 26(b)(4)(B) for non-testifying experts were not waived where nothing more than

9  the identity of the expert and the subject matter of his testimony was revealed); *see also CP*

10  *Kelco U.S., Inc. v. Pharmacia Corp.*, 213 F.R.D. 176 (D. Del. 2003) (holding that where the

11  attorney-client privilege was waived when defendant produced certain documents to its expert

12  witness, defendant was required to produce those documents to the opposing party,

13  notwithstanding that after the expert's deposition, defendant decided to re-designate the expert

14  as a non-testifying consultant).

15    In the instant case, however, it is not apparent that there is any need for Dr. Hillman's

16  testimony.  St. Paul says that the court's recent order on summary judgment and the order

17  denying leave to seek reconsideration largely disposes of the issues about which Dr. Hillman

18  was designated to testify – i.e., whether there was damage to property other than Cirrus' chips

19  and whether any damage was sudden – in support of St. Paul's contention that an "impaired

20  property" exclusion applied.  Further, St. Paul says that the only issue left unresolved by the

21  court's summary judgment ruling – i.e., how the "Other Insurance" provisions of the St. Paul

22  policy apply to Cirrus' claim – is a subject about which Dr. Hillman was never designated to

23  testify.

24    Federal Insurance does not directly dispute these contentions.  Instead, it argues that

25  there remains a real possibility that expert evidence will be presented on the technical issues

26  concerning whether there was any physical damage outside the Cirrus chips and whether any

27  damage was sudden.  Here, it expresses concern that St. Paul may assert coverage arguments

28  based on these technical issues, even if it will not present Dr. Hillman's testimony to support

United States District Court

For the Northern District of California

1   them.  Federal Insurance maintains that it should therefore be permitted to depose Dr. Hillman

2   about his knowledge as a percipient witness on a number of "collateral factual issues,"

3   including the tests he performed in the Underlying Litigation, as well as his knowledge of the

4   "state of evolving contemporaneous knowledge among the scientific community."  (Opp. at pp.

5   11-12).  While Federal Insurance has no current plans to call Dr. Hillman to testify at trial, it

6   does not exclude the possibility that it will seek to do so.  Here, it asserts that the court has not

7   said whether its summary judgment ruling as to St. Paul's duty to defend is a conclusion of law

8   or is simply a finding that triable fact issues remain.  As such, Federal Insurance maintains that

9   the door remains open for the presentation of expert evidence.

10          This court is unpersuaded that "exceptional circumstances" exist to justify Federal

11   Insurance's request to obtain deposition or document discovery of Dr. Hillman.  St. Paul says

12   that it did not rely on Dr. Hillman on summary judgment and further represents that it has no

13   intention of calling him at trial.  Moreover, St. Paul points out that Dr. Hillman did not perform

14   any tests in connection with the instant action and that information about his work in the

15   Underlying Litigation and all of the work which formed the basis for his report in the instant

16   action is accessible to Federal Insurance in the records from the Underlying Litigation –

17   including six days of deposition testimony by Dr. Hillman.  (*See* Shrake Reply Decl., Exs. 3-8).

18          Moreover, there is nothing in the record before this court to suggest that the re-

19   designation was prompted by anything other than the current posture of these proceedings.

20   Federal Insurance theorizes that Dr. Hillman must have changed his mind about the opinions

21   rendered in his expert report and further hypothesizes that the re-designation is little more than

22   an eleventh hour attempt to conceal what must be unfavorable opinions for St. Paul.  However,

23   Federal Insurance's supposition is unpersuasively speculative; and, Dr. Hillman attests that

24   none of his opinions in this matter have changed.  True, St. Paul re-designated Dr. Hillman on

25   the eve of his scheduled deposition.  However, the re-designation came a little more than a

26   week after the court issued its order denying leave to seek reconsideration of its summary

27   judgment rulings.

28

7

1          Federal Insurance maintains that, notwithstanding St. Paul's re-designation of Dr.

2    Hillman, Dr. Blanchard will continue to have a role in this litigation.  Here, it says that Dr.

3    Blanchard was retained not only to rebut Dr. Hillman's opinion, but also to rebut any technical

4    arguments which might be raised.  However, that contention is not borne out by the record.  The

5    record presented shows that Dr. Blanchard was retained solely for the purpose of rebutting

6    opinions offered by Dr. Hillman.  (Shrake Decl., Ex. 4).  Since Dr. Hillman will not be

7    testifying, there appears to be nothing for Dr. Blanchard to rebut.

8          Even under the more permissive "balancing test," Federal Insurance has not managed to

9    convince that discovery of Dr. Hillman should be allowed (or that testimony by Dr. Blanchard

10   will be necessary).  Indeed, it appears to this court that, having missed the boat on the

11   opportunity to designate an expert to testify about technical issues, Federal Insurance now seeks

12   to either piggyback on St. Paul's prior designation of Dr. Hillman or to somehow transform Dr.

13   Blanchard into something other than a rebuttal expert.  The deadline for expert designation has

14   long passed, and the period for expert discovery will close in about ten days.  Federal Insurance

15   had ample opportunity to designate principal experts to testify at trial and apparently decided

16   not to designate any expert testimony except in rebuttal to Dr. Hillman.  Indeed, at oral

17   argument, Federal Insurance acknowledged that it is "at a procedural loss" because, at the time

18   expert designations were due, it did not anticipate that technical issues would be relevant.

19         Federal Insurance maintains that, even if Dr. Hillman does not testify, it will be severely

20   prejudiced if it is not now permitted to present any expert testimony to rebut coverage

21   arguments St. Paul might assert based on technical issues.  However, to the extent there is any

22   such prejudice, it was not precipitated by St. Paul's re-designation of Dr. Hillman, but rather, by

23   Federal Insurance's decision not to designate any principal experts in the first place.  Nor is

24   Federal Insurance saved by its offer to now re-designate Dr. Blanchard as a principal testifying

25   expert.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1368-69 (Fed.

26   Cir. 2006) (finding no abuse of discretion in denial of leave to supplement an expert report to

27   include a theory which was not timely disclosed under Fed.R.Civ.P. 26(a)); *see also*

28   Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required

United States District Court

For the Northern District of California

1   by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

2   evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or

3   is harmless.").

4          Federal Insurance protests that St. Paul has, in effect, waived any objection to the

5   continued use of Dr. Blanchard because it did not object to the submission of his declaration on

6   summary judgment.  As such, Federal Insurance argues that Dr. Blanchard must be permitted to

7   testify because his opinion has become part of the record.  These arguments fail to convince.

8   St. Paul's re-designation of Dr. Hillman came well after briefing on summary judgment was

9   submitted.  And, the court's order denying reconsideration expressly states that the court did not

10  consider Dr. Blanchard's testimony in ruling on summary judgment.  (*See* Docket No. 101 at

11  3:25-26).

12         Accordingly, this court concludes that St. Paul's motion should be granted.

### III.  ORDER

14         Based on the foregoing, IT IS ORDERED THAT St. Paul's motion for protective order

15  as to Dr. Hillman and to bar testimony by Dr. Blanchard is GRANTED.

16  Dated:    March 19, 2008

17  _____

18  HOWARD R. LLOYD
    UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

9

United States District Court

For the Northern District of California

1

**5:05-cv-1878 Notice has been electronically mailed to**:

2 Thomas R. Beer tbeer@barwol.com, jlee@barwol.com, mbatres@barwol.com, tdo@barwol.com, ynesbitt@barwol.com

3

Melissa A Dubbs mdubbs@ccplaw.com

4

William Lee wlee@barwol.com, syoung@barwol.com

5

Stephen Lynn Newton efile@newtonremmel.com, snewton@newtonremmel.com

6

Marc J. Shrake mshrake@ssd.com, clopez@ssd.com, ekimble@ssd.com

7

8 **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28